Before we begin, Judge Jordan and I would like to thank Judge Graham for coming down from the Southern District of Ohio, Columbus, to help us decide these cases this week. We appreciate your assistance, Judge Graham. Thank you, Judge Wilson. It's an honor and a pleasure to be here. We have two that are scheduled this morning. The first is Handy Land & Timber v. Transcontinental Gas Pipe Line. And Mr. Kemp is here for Handy Land. Mr. Massey is here for Transco. Mr. Kemp, are you ready to proceed? Yes, sir. Thank you, Judge. Mr. Wilson, Harry Kemp on behalf of Handy Land & Timber. May it please the Court. There's no substantial federal interest in a private dispute over Transco's theft of Handy Land's timber. The fact Transco may have engaged in such activity during the course of constructing a federally permitted pipeline project does not change that fact. Therefore, the resulting state law claims cannot be removed to federal court. This case, in this case, Transco was permitted to clear a right-of-way by FERC, the Federal Energy Regulatory Commission, on Handy Land's property. Transco did so over a year and a half ago without interference from Handy Land. But FERC allowed only the removal of the trees necessary to build the pipeline project, not their sale over Handy Land's objection, and certainly not Transco's retention of the proceeds from that sale. So, to decide whether or not Transco had the authority to do that, if this case were back in state court, how would the state court make that determination? Wouldn't it have to look at the FERC certificate and interpret the National Gas Act in order to do that? Well, if Transco raised that as a defense, and we anticipated that defense in our complaint and weren't trying to, you know, hide the ball that there was a FERC project out there. But if Transco didn't raise that defense or there was no FERC project, certainly it would, on its face, the state law claim would stand. Even if Transco didn't raise that as a defense, if Transco didn't raise it as a defense, how would the state court make that determination? Whether or not you have the authority to fell those trees and sell them to the mill, how would the state court, what would the state court look at to determine whether or not they have the authority to do that? Well, I guess first of all, if there were no FERC project, if Transco had just come out there and taken Handyland's trees, then it would just be a typical state court conversion case. But there is a FERC certificate. Of course. And we contend that this is simply outside the scope of the FERC certificate. Doesn't that answer the question though? Because as Judge Wilson's question suggests, in order to figure out whether or not Transco did something that entitles you to compensation at this time, some court is going to have to figure out whether or not Transco violated the terms of that certificate and the district court's original order allowing the easement, right? Isn't that a substantial federal ingredient of your claim? You have to not only claim, you have to prove that Transco did something that was not permitted by the FERC certificate. We do if Transco raises that as a defense. No, even if they don't raise it as a defense, don't you have to prove that they acted outside of the FERC certificate? Not if the FERC certificate never came up in the state court action. You raised it in your complaint, right? You mentioned it in your complaint. It's not like it's coming outside of the complaint. Okay, let's change the facts. If all Transco did was knock down the trees to clear the right-of-way and you claim trespass, conversion, et cetera, would that case arise under federal law? Yes, because the FERC certificate says they have the right to clear the trees. Right, and in your case, you think Transco loses because the FERC certificate doesn't allow them to do that. Right, but it's the absence of being in the, I mean, the court can imagine any number of scenarios where Transco could exceed the bounds, could over encumber the easement that FERC permits it to have, that it has under federal law. Absolutely. But it doesn't mean you lose the claim. It just means that it might involve a substantial federal question because it's a necessary ingredient of your state law claim. You have to show a violation of federal law to win on your claim for trespass and conversion, do you not? Well, if the FERC certificate is construed as federal law. What else could it be? It's issued by a federal agency, a federal court interpreting it granted the easement which you've appealed. How could it be anything other than federal law? Well, when applying the substantiality test, courts have often said law or regulation. I don't think it would qualify as either a federal statute or a federal regulation. It's something specifically for this project and as to its application to the federal system, it only applies to this project. And FERC and TRANSCO drafted it. FERC approves what TRANSCO submits and drafts and they can, of course, modify it or put conditions on it. So even TRANSCO, it won't even apply to another TRANSCO project. They could modify their language if possible, but I would contend they can't take the cut chattels once they remove them from the right way. There'd be no public necessity for TRANSCO converting those trees for its own profit. So once you filed in state court, you filed trespass claim and a trover claim. And so your argument is that the state would, that the state court would apply state law to determine viability under those claims? Well, that's right, I guess. Yes. Yes. All right. Well, then if the state court does that, what happens if the state court and the federal court have inconsistent verdicts? What happens if the state court says, yep, TRANSCO shouldn't have, TRANSCO was wrong, but the federal court says, well, no, TRANSCO wasn't wrong. Well, if we . . . Don't you have that, if this case went back to state court, don't you have the possibility of inconsistent verdicts? Well, it's possible. But we contend that TRANSCO would have avenues of relief in that regard if the state court proceeded and then the federal court later found that there was some overlap. I guess they could ask for some sort of set off. They could ask the state court for a stay while the federal case proceeded. But we contend that they're just completely separate claims. It will not be a part of the underlying condemnation in federal court because the trees, once they're cut and removed from the right-of-way . . . Doesn't your client have a remedy in the condemnation proceeding in federal court? It has a remedy for the diminution of value to the property because of the easement that TRANSCO is taking. But that remedy may or may not include the right to the value of the cut trees. Well, federal courts grant those damages and these types of condemnation proceedings all the time, don't they? There are several cases that are cited in the briefs that reflect that federal courts have the authority to grant. Well, I think some of the cases cited by TRANSCO indicate that the federal court cannot grant just an adequate compensation in a condemnation action if the trees that were taken did not diminish the value of the property. And what we're talking about is a commodity, essentially. Once it's cut and removed from the right-of-way . . . But the federal court can determine damages on your behalf, couldn't it? It can, for the land value, but only for the land value and any consequential damages to the rest of the property. What would the state court, what would the measure of damages be in state court? Well, the measure of damages in the state court would be the value of the trees that were converted once they were removed from the right-of-way. TRANSCO had an alternative here and this happens all the time. They admitted in the district court that on other properties on this project, they've set the merchantable timber aside off of the right-of-way for the landowner to do with it as he wishes. Handyland asks for that to happen without impeding on their project's progress at all. And yet TRANSCO refused to do that. And so at that point, it became a separate, it's a chattel, clearly under Georgia law, cut merchantable timber. It's no longer part of the land and no longer part of what will be considered in the just and adequate compensation phase. I would ask the court to think of it in reverse, perhaps. What if we went forward with the federal condemnation and TRANSCO and Handyland did not make these state law claims and the federal court ultimately decided, oh no, you should have, you might have had a claim there in state court, but you should have brought it then. And at that point, we don't even know when that will be, two, three years from now. We can no longer bring the statute, the statute of limitations is passed. We can no longer bring the claim. Or the federal court could award just and adequate compensation and then years down the road, there could be some other commodity growing out there that's not inconsistent with running a federal pipeline. And certainly TRANSCO can't come back out there at harvest time. You've got some rare and exquisite mushroom that just happens to grow up in the wild out there and TRANSCO comes in and scoops them all up and says, oh, we're going to get into the mushroom business and sell these mushrooms. Let's say we have jurisdiction and you don't have much time left. What do you have to say about the dismissal of the state law claims? Well, our dismissal, our position on that is that we certainly contested the motion to dismiss both at the oral hearing and on paper. We spilled a lot of ink on these cases. There was... You didn't respond to the motion to dismiss. There was no response denominated as a response to the motion to dismiss. But at the same time, we were responding to... We were briefing a TRO. We were responding to their... to the motion to remand. Do you want to tell us that the court abused its discretion by granting the motion to dismiss solely on the basis that there was no response? Yes. Based on our opinion in Jumeau versus Olson? Sir? Is that your argument or is that not your argument? That is our first argument. Our secondary position would be that as Transco raised in its brief, the court did entertain evidence at the hearing. That's all in the record. And so we would secondarily argue that the court erred in not converting that motion to dismiss into a motion for summary judgment. All right. We have your argument. Thank you, Mr. Kemp. We'll hear from Mr. Massey. Thank you. May it please the court. Good morning. Clay Massey for Transcontinental Gas Pipeline Company. The appellee. Your Honor's appellant's action below was a state court collateral attack on Transco's federally authorized pipeline condemnation and construction. The exercise of jurisdiction, the dismissal of the claims, and the denial of the temporary restraining order. Well, let's talk about that for a second. Let's say that I'm going to give you a crazy, crazy set of facts, okay? But hopefully they'll make a point. Sir? Let's say that Transco's employees go on a drinking binge the night before work. And they just trash a house that is on Handy's property. They just trash it, right? Destroy it inside because they're liquored up. Can they file a claim in state court against you? Absolutely. Why is that? Because that would be outside of our federal authority. That's exactly the claim they're making now. You just think you win on the merits of the claim because you're authorized to do what you did with the timber. But Mr. Kemp's argument is that if your contention is that they can file a collateral state court action because what Transco's alleged to have done is outside of the FERC certificate, that's no different than my hypothetical. Well, respectfully, the distinction I see, Your Honor, is that individuals who are drinking and then damage something, let's say, first of all, outside of the easement area, right? We don't have any, we wouldn't have any authority outside of the easement area that is granted pursuant to the FERC certificate, the alignment sheets, and the district court's order to be anywhere on that property. Then even if this were to happen within the easement area, individuals becoming intoxicated or doing something that's detached from, truly detached from, carrying out the federal authority, the federal delegation that Transco's been given to construct a pipeline, it falls without, outside of the realm of the federal authority and then the federal jurisdiction. That's their claim. But the difference is here, the trees are within the easement area. In order to construct the federally authorized pipeline, in order to carry out our responsibility, our authority under the FERC certificate and the NGA, that is what we have to do. We have to clear the trees. You can't build a pipeline without clearing the trees. I know, but it doesn't mean you have to take them and sell them without giving them to Handy. I mean, this case, I don't know whether you win or lose at the end of the day, but this case sounds really bad. From an equity perspective, this case sounds really bad. You knock down trees that you're entitled, as alleged, I know it's all alleged. You knock down trees that you're entitled to knock down for the easement that you've been granted under the FERC certificate and the district court's order. The landowner says to you, no problem, put the trees aside, we'll get them and we're going to sell them. And you say, no, no, no, we'll sell them ourselves. That sounds really, really bad. Well, a couple of things. First of all, what we do with the elements of the land, for instance, the dirt, the grass, the rocks, and the process of clearing the property to prepare it for the pipeline construction is all part of the process for constructing the pipeline. And condemnation law does not look at, in terms of the compensation or the entitlement of the landowner, what the benefit to the condemning authority is. To the extent you accept their allegations is true, that we sold for profit these trees, which, in fact, in their pleadings, they present testimony that actually that's not what happened, that the contractor who we hired to clear this just took it to a mill to be processed. Their own documents illustrate that we didn't go sell, Transco didn't go sell these. It was just a process of the contractor taking them to a mill, which the EA, which the environmental assessment, which is incorporated into the FERC certificate. You profited from the sale of the timber to the mills? No, Your Honor. You just gave them to the mills without any compensation? So the contractor, so we have to, we hire contractors to build a pipeline, including clear the property and prepare it for construction. As pursuant to the environmental assessment, which is cited in our papers, and quoted in our papers, and one of the basis for Judge Ross's order, that the contractor in construction of the pipeline is allowed to, authorized to, remove the trees and take them to a mill. You didn't get money from the mill? No, no, Your Honor. Transco did not. Okay. So in the condemnation proceeding, are the trees part of the value of the land? They're still growing trees. I take it they're part of the realty, am I right? That's exactly right, Your Honor. All right. So they would get the value of the trees as part of the taking compensation? That would be litigated, yes. So under the law that would apply to the case, the value of the land has to be assessed incorporating the elements of the land, whether it be minerals, whether it be a house or structures on the property, whether it be merchantable timber. If that increases the value of the property, that is a factor that has to be considered in determining the just and adequate compensation. So when we get to the condemnation proceedings adjudication of compensation, which is where all of this should be decided, there will be an adjudication of the extent to which they are entitled to factor in the value of the trees in determining the market value as an element of the property. They will be compensated. That's routinely done in condemnation actions. And so it's not as if by us removing the trees pursuant to our federal authority and pursuant to the construction of the pipeline under that authority, that they're never going to realize any compensation for the merchantable timber that was on the property and had to be removed. But they may not realize the amount that they think they're entitled to because the worth of cut timber as a chattel is not necessarily the same as the value of how that timber would have enhanced the land had the timber still been on it. Those are not necessarily one and the same, right? Your Honor, I would say they are the same because, first of all, they didn't become cut until we cut them. So they were merchantable timber even when they were living trees in the ground. And that factor had to be taken into consideration, will have to be taken into consideration in evaluating the value of the property. So we go in and we cut the trees because we have to clear the right of way to build the pipeline. That is still an element of the land. And, again, in the condemnation proceeding, we will litigate. I'm sure they will say they're entitled to more money for the trees. And that will be adjudicated in the federal condemnation action. They can't file a collateral state court action to adjudicate that issue, which has to be in the condemnation action. And that's really what we're talking about. We'll be able to litigate this issue. What are they entitled to? Are they entitled to it as a separate element from the land? The law says no, but I'm sure they'll make that argument. And they'll make that argument in the condemnation action. The issue is just whether they can file an action in the Superior Court of Coweta County to say we... applies here. And so I'm not aware that this circuit has ever accepted jurisdiction under the substantial federal question doctrine when an analysis has been required. This would be the first time, wouldn't it? It actually would not, Your Honor. Recently, we submitted some supplemental authority on that this week. And the Court's decision in the Turbeville case, the Turbeville versus FINRA case, this is a November 1st, 2017 decision. It's at 874 F3rd 1268. And in the Turbeville case, what you had is you had a securities broker that was regulated by the Financial Industry Regulatory Authority, which is FINRA. And FINRA is what's called a self-regulating organization under the Securities Act. And that entity, which is a private entity, is authorized and required to promulgate rules governing the actions of broker-dealers. And in that action, the broker-dealer, Mr. Turbeville, had allegedly got... had some misconduct and he was going through a disciplinary proceeding. And the FINRA issued what's called a Wells Notice, which is a notice that the individual is under investigation and published that on something called BrokerCheck, which is an internet portal that allows folks to go see brokers and whether they are under investigation or their status. And he sued, saying that the Wells Notice, which said that he was under investigation for witness tampering, was defamatory. And he sued in state court. And what the Court of Appeals found was... well, let me back up. The Wells Notice is something that is required, not just authorized, but required of FINRA. It's a procedure under their rules, which were enacted under the Securities Exchange Act and approved by the SEC, that they have to do. What was at issue in the case with respect to the defamation claim was whether the Wells Notice was actually authorized and required under those FINRA rules. And what this court said is, in order... and that was the essential element of the plaintiff's claims. The plaintiff would not have a defamation claim if the Wells Notice was authorized and required. And what the court said is that because the determination, the basis of those claims, those state court claims, requires a court to construe these regulations that unavoidably involves federal questions. All right. We'll take a... I'm going to take a look at the Turbeville opinion. Yes, Your Honor. But let's assume now that we have jurisdiction. Yes, Your Honor. And the court... I'm looking at Judge Ross's order. She says the motion to dismiss is deemed unopposed and the court grants it for this reason. And haven't we said before that a district court abuses its discretion if it grants a motion to dismiss solely on the basis that the motion to dismiss is unopposed? Your Honor, in the Juneau case, I believe what the court said is it's an abusive discretion for the court to grant a motion to dismiss on that basis without any consideration of the merits. And so here we have a difference. We have a consideration of the merits. In Juneau, what you had was a calendar error by an attorney and they didn't file within... by the deadline. They were a few days late. And the district court granted the motion to dismiss solely on that basis saying you didn't file a response. And so as a result, it's dismissed. There was a motion for reconsideration filed and the court still didn't indicate that it considered any of the merits of the allegations. What we have here is different because Judge Ross did say that, first of all, you didn't file a response and under the Stubbs decision, that allows me to dismiss the claims. And I understand Juneau followed. It was subsequent to the Stubbs decision in controls. But what she said throughout her opinion is it illustrates that she did consider the merits of the case. Starting on page 2 of her opinion, and this is page 145 of the record volume, I think it's volume 2, of Handyland's appendix. And this is page 144. Well, point me to the language now where she discusses the merits. Well, first of all, on page 2, yes, Your Honor. First of all, on page 2, she discusses Handyland's amended complaint, sets forth claims against Transco, and she identifies the claims, trespass, trover, money hadn't received, and Handyland seeks equitable relief, punitive damages, and attorney's fees. This is all background information. Yes, Your Honor. And the next section is discussion. The next section is discussion. And she says, at best, this is a case of form shopping. Handyland is part of the condemnation case. Handyland admits in its amended complaint, admits in its amended complaint that Transco is engaging in, quote, unquote, lawful condemnation of its property. To believe that Handyland, as the property owner, could institute a wholly separate action in state court, the subject of which is, in fact, the subject of that state court action, Handyland, that is, is what Transco can and cannot do in the condemnation proceeding, stretches the rules of civil procedure to new bounds. Well, the best language you have, it seems to me, is on the first full paragraph of page 4, because after the district court says that the motion to dismiss is deemed unopposed because Handyland has not responded, it says, moreover, the court would grant Transco's motion to dismiss for the well-stated reasons in the motion. Exactly. Exactly. Thank you, Your Honor. I was heading right there. And referring to our motion to dismiss, we presented the basis, preemption, that the EA and the FERC certificate authorized the taking of the trees, that this determination about their compensation for the trees had to be determined in the condemnation proceeding and not a collateral state court proceeding. And she says that those are reasons to dismiss the claims. And, in fact, in the transcript on the April 11, 2017 hearing on their motion for temporary restraining order, she says on page 22, I've read the pleadings. I mean, she was clearly, in that whole discussion, including the discussion that follows in her order on page 5 about the EA and the FERC certificate, illustrates that she had considered the merits of this allegation that our taking of the trees was unauthorized under the NGA and the FERC certificate. So unlike Juneau, which had no indication, and the footnote says in Juneau in footnote 3, in fact, the order offers no information about the facts alleged in the complaint, much less whether, if taken as true, they state a claim on which relief can be granted, this is not a Juneau situation. Thank you very much. All right. Mr. Kemp, you have reserved some time for rebuttal. Thank you, Judge Wilson. Transco said in their argument that they could, that the environmental assessment allowed their contractor to take these trees to the mill. And I want to, I've got excerpts that are in our briefs from the environmental assessment. It's a rather lengthy volume and incorporates several hundred other pages of submissions that they made. But I think everyone agrees that the pertinent language is on page 11 of the environmental assessment. A clearing crew would clear the area of vegetation and other obstacles, including trees, stumps, logs, brush, and rocks. Cleared vegetation would be burned, chipped, or hauled off site to a commercial disposal facility. Merchantable timber would be limbed, cut, and removed from the right-of-way. So there's clearly a distinction there in something that might be marketable versus something that is just refuse from the construction. That, it says in the first certificate, they can dispose of that. They can remove it from the right-of-way and dispose of it. But the merchantable timber is different. It also says in their upland erosion and revegetation maintenance plan as to disposal planning. They can dispose of materials for beneficial reuse, but it must not, it must be in compliance with all landowner or land management agency approval and permit requirements. I'm not reading the whole passage, but it is in our briefs. And then TRANSCO cited in its brief an environmental assessment from another case, to the extent there's any ambiguity in the language, just you can remove it from the right-of-way, period, full stop. They cited the environmental assessment that FERC issued in the Spire Pipeline Project. And it says that, says that timber would be removed and disposed of in accordance with landowner preferences and applicable law. Well, one of the issues, Mr. Camp, that I have a concern about on your side of the case is that with regard to the merits, you really didn't brief anything. I mean, you spend a lot of time correctly arguing that there's no federal subject matter jurisdiction, but when it comes to the dismissal on the merits, it's just two sentences without any citation of authority or development of argument or anything else. What are we supposed to do with that? Well, Judge, that's a valid criticism. Again, we would stand by our briefing from the lower court. We do think it adequately covered those issues, but we do believe that the court never gets to the dismissal, obviously, if the jurisdiction doesn't exist. And we feel very strongly on that point. And so that is our main argument. It's completely disingenuous for Transco to say that somehow they don't have responsibility because they hired contractors. I mean, it's their name on the, they're responsible for their agents, the contractors that they hired to come out there. And obviously, they were paid. Obviously, we haven't done any discovery on this, but they didn't just drop this stuff off at a mill. And to the extent the contractors were paid and they didn't pass it along to Transco, well, I'm sure that was taken into account in the contract they had negotiated. So, counsel, what do you say about their contention that they're going to have to pay you for the value of these trees in the condemnation proceeding because they were part of the land? Well, they only have to pay for them as they were a part of the land. And so it's only to the extent those trees contributed to the value of the land. Well, that's the whole point, isn't it? You're saying that those trees were valuable, so that's part of the value of the land, isn't it? Well, the condemnation will look at the highest and best use of the value of the land. Right. The land may be more valuable. If the, I can't imagine it had many value for anything else other than the timbers out there in the middle of the country, did it? Oh, I don't know. I think residential use could potentially be more valuable than timber land. But that would be included, too, in the assessment of the taking, wouldn't it? Well, it would. But if it exceeded the value of the land as timber land, you would use that residential value potentially. You'd get the greatest value, whichever measure applied, wouldn't you? Well, but that doesn't mean that even if you sold your own land for residential use, you couldn't, before you did it, cut the timber. But you can't sell it for your own use. It's being condemned and you're entitled to fair compensation. Absolutely. But there's also no valid public use not conveyed by FERC or even under the Fifth Amendment. Building a pipeline is not a proper use. For them converting chattels that were already cut and removed from the right of way. It's entirely possible that you could get greater compensation in federal court than you could in state court, isn't it? It's possible. But we feel strongly that we're entitled to the compensation they have. Someone has money sitting in their bank account and trust on all these trees up and down this 115 mile project. I would just very quickly refer the court to the two circuit decisions that we did put in our briefs that do closest speak to the issues of the substantiality test. And those are one out of the Fourth Circuit and out of the Sixth Circuit, respectively Prestle v. Appalachian Power and Columbia Gas v. Singh. Both of those actions were remanded to the state court on a declaratory judgment action to say that the terms of the easement is a state court issue. And traditionally those claims are decided in state court. We think Turbeville is easily distinguishable. For one, it involved a government entity, FINRA, as the defendant, which is not the case here. And it also involved a negligence claim, which required construing federal law to create a duty to succeed on the negligence claim, which also is not required here. Thank you very much. All right. Thank you, counsel. And the next case is Evanston Insurance Company v.